IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION | ) |
| | ) |
| JOHN DECASTRO and VICKI DECASTRO, his wife, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civ. No. 16-951-LPS-SRF ) |
| AEROJET ROCKETDYNE HOLDINGS, INC. et al., | ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**I.  INTRODUCTION**

Presently before the court in this asbestos-related personal injury action are the motions for summary judgment of Defendants Union Carbide Corporation ("Union Carbide"), Curtiss-Wright Corporation ("Curtiss-Wright"), Pfizer, Inc. ("Pfizer"), Honeywell International, Inc.[1] ("Honeywell"), and United Technologies Corporation[2] ("UTC"), as well as Goodyear Tire & Rubber Company's ("Goodyear") (collectively, "Defendants") motion for partial summary judgment. (D.I. 108; D.I. 110; D.I. 112; D.I. 114; D.I. 120; D.I. 122)[3] Plaintiffs John DeCastro ("Plaintiff" or "Mr. DeCastro") and Vicki DeCastro, his wife (collectively, "Plaintiffs"), did not respond to these motions. As indicated in the chart *infra* and for the reasons that follow, the

---

[1] Honeywell International, Inc. is formerly known as Allied Signal, Inc. ("Allied"), and is the successor in interest to the Bendix Corporation ("Bendix"). (D.I. 72 at ¶ 8)

[2] United Technologies is named individually and as successor to United Technologies Pratt & Whitney Aircraft Division ("Pratt & Whitney"). (D.I. 72 at ¶ 8)

[3] All briefing associated with these motions can be found at D.I. 111; D.I. 113; D.I. 115; D.I. 121; D.I. 123.

court recommends GRANTING Defendants' motions for summary judgment and partial summary judgment, respectively.

| Defendant | Motion for Summary Judgment |
|---|---|
| Union Carbide Corporation | GRANT |
| Curtiss-Wright Corporation | GRANT |
| Pfizer, Inc. | GRANT |
| Honeywell International, Inc. | GRANT |
| United Technologies Corporation | GRANT |
| Goodyear Tire & Rubber Company | GRANT |

## II. BACKGROUND

### A. Procedural History

On September 1, 2016, Plaintiffs originally filed this personal injury action against multiple defendants in the Superior Court of Delaware, asserting claims arising from Mr. DeCastro's alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On October 14, 2016, the case was removed to this court by Defendant UTC pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer removal statue,[4] and 1446. (D.I. 1) Plaintiffs filed a First Amended Complaint on May 24, 2017. (D.I. 72) Union Carbide, Curtiss-Wright, Pfizer, Honeywell, and UTC filed the pending motions for summary judgment, individually. (D.I. 108; D.I. 110; D.I. 112; D.I. 114; D.I. 120) Goodyear filed the pending motion for partial summary judgment individually.[5] (D.I. D.I. 122) Plaintiffs did not respond to these motions. On November 20, 2017, Defendants sent a

---

[4] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

[5] Viewing the facts in the light most favorable to Plaintiffs, Goodyear's motion seeks to limit Plaintiffs' claims to correspond with the aircraft upon which Mr. DeCastro could have arguably been exposed to asbestos-containing Goodyear products.

2

joint letter to the court seeking dismissal for Plaintiffs' failure to oppose any of their respective summary judgment motions. (D.I. 128)

### B. Facts

#### 1. Plaintiff's Alleged Exposure History

Plaintiffs allege that Mr. DeCastro developed lung cancer as a result of exposure to asbestos-containing materials during his service in the United States Air Force, as well as from his civilian employment with Pacific Bell Telephone and United Airlines, and personal automotive and aircraft maintenance work. (D.I. 72 at ¶¶ 3-6, 14) Plaintiffs contend that Mr. DeCastro was injured due to exposure to asbestos-containing products that Defendants manufactured, sold, distributed, licensed, or installed. (*Id.* at ¶ 9) Accordingly, Plaintiffs assert claims for negligence, willful and wanton conduct, strict liability, and loss of consortium. (*Id.* at 6-13)

Mr. DeCastro was deposed on February 21 and 22, 2017. (D.I. 37) Plaintiffs did not produce any other fact or product identification witnesses for deposition.[6] Plaintiff began his professional career in 1948 when he worked for Pacific Bell Telephone as a "frameman." (D.I. 121, Ex. E at 11:23-12:5) As a "frameman," Plaintiff had to work with the telephone frames and wiring that provided telephone services to customers. (*Id.* at 110:1-111:10) Plaintiff did not, however, perform any work to any of the electrical panels. (*Id.* at 244:1-4)

Two years later, in 1950, Plaintiff joined the United States Air Force where he served for forty years. (*Id.* at 14:15-19) Throughout his time in the Air Force, he held the duties of aircraft mechanic, aircraft foreman, and aircraft superintendent. (*Id.* at 14:20-24) After first attending

---

[6] The deadline for completion of depositions of all co-worker, product identification, and other exposure testimony witnesses was July 17, 2017. (D.I. 48 at 8)

3

basic training at Lackland Air Force Base in San Antonio, Texas, Plaintiff went to Shepard Air Force Base in Wichita Falls, Texas, to attend aircraft and engine school. (*Id.* at 120:20-23; 122:10-24)

Plaintiff reported to Williams Air Force Base ("Williams") in Chandler, Arizona, from 1951 to 1952. (*Id.* at 124:13-17) At Williams, Plaintiff performed maintenance, including brake work, on Lockheed F-80 aircraft ("F-80"). (*Id.* at 16:19-17:10; 18:9-11) After Williams, Plaintiff was stationed at Laredo Air Force Base ("Laredo") in Laredo, Texas, from 1951 to 1954. (*Id.* at 24:20-25) At Laredo, Plaintiff performed maintenance, including brake work, on Lockheed T-33 aircraft ("T-33"). (*Id.* at 25:4-21) In 1954, Plaintiff was briefly discharged from the Air Force. (*Id.* at 28:16-21) At this time, Plaintiff returned to San Francisco, California, and went to work for United Airlines for about six months. (*Id.*) There, Plaintiff worked as an aircraft mechanic, but did not perform any brake work. (*Id.* at 29:1-4)

Plaintiff began civil service at Hamilton Air Force Base ("Hamilton") in late 1954 until 1968. (*Id.* at 29:24-30:3) During his tenure at Hamilton, Plaintiff worked on a number of different aircraft such as P-51 Mustangs, F-80s, F-84s, Curtiss-Wright C-46s (C-46"), and Fairchild C-119s ("C-119"). (*Id.* at 30:16-31:15) As an aircraft mechanic, he performed the same repairs and brake work at Hamilton as he performed at Williams and Laredo. (*Id.* at 32:1-7) Plaintiff was called for active duty at Hamilton for eighteen months, beginning in 1968. (*Id.* at 39:13-20) While on active duty, Plaintiff served in England and Vietnam. (*Id.* at 150:21-6)

After active duty, Plaintiff went to Travis Air Force Base ("Travis") in 1970, where he remained until he retired in 1990. (*Id.* at 161:24-162:9) His job title when he first arrived in Travis was aircraft mechanic, but he was later promoted to aircraft foreman, and eventually superintendent. (*Id.* at 39:21-40:4) At Travis, Plaintiff worked on Lockheed C-141s Starlifters

4

("C-141"). (*Id.* at 40:5-6)

Plaintiff resumed working for United Airlines from 1986 to 1996 as an aircraft mechanic and hydraulic specialist. (*Id.* at 180:9-13) He did not perform any brake work while working for United Airlines, but worked close to the brake shop. (*Id.* at 181:10-13) Plaintiff was not aware of the manufacturer of any brakes the mechanics installed or removed at United Airlines. (*Id.* at 181:14-182:2)

Finally, Plaintiff testified that he personally owned a 1963 Cessna 172, Cessna 150, and an Ercoupe aircraft. (*Id.* at 44:14-45:1; 187:19-24) He performed maintenance and repair work on the aircraft, including brake work. (*Id.* at 45:13-46:1) In addition to performing maintenance work on his personal aircraft, Plaintiff also performed repairs and brake work on his numerous personal vehicles. (*Id.* at 48:1-49:10)

### 2. Plaintiff's Product Identification Evidence

#### a. Union Carbide Corporation

Plaintiff did not identify an asbestos-containing Union Carbide product. (*See* D.I. 121, Ex. E)

#### b. Curtiss-Wright Corporation

Plaintiff recalled working on Curtiss-Wright C-46 aircraft while stationed at Hamilton. (D.I. 111, Ex. A at 297:4-15) He was a crew chief for one C-46 aircraft, but performed work on all twelve that were "on the field." (*Id.* at 298:5-11) Plaintiff was personally responsible for "maintaining the aircraft," performing work such as refueling, and changing oil and hydraulic fluid. (*Id.* at 298:15-21) He did not remember doing any brake work on any of the C-46s. (*Id.* at 298:12-14)

#### c. Pfizer, Inc.

5

Plaintiff did not identify an asbestos-containing Pfizer product. (*See* D.I. 121, Ex. E)

### d. Honeywell International, Inc.

While serving at Williams, Plaintiff performed "four to five" brake replacements on F-80s with Bendix and Goodyear brakes. (D.I. 115, Ex. A at 18:9-25; 20:21-25) Plaintiff did not know the manufacturer of the brakes he removed from the F-80s. (*Id.*, Ex. B at 141:13-15) Plaintiff believed that the replacement brakes he installed were manufactured by Bendix because he recalled seeing Bendix packaging at some unknown place at an unknown time. (*Id.* at 132:25-133:6) However, because there was no manufacturer's name on the packaging of replacement brakes, he could not identify the manufacturer. (*Id.* at 132:3-8) In addition to personally performing brake work at Williams, Plaintiff was present "four or five times" when other mechanics performed brake work. (*Id.*, Ex. A at 28:6-11) He did not know the manufacturer of the brakes other mechanics installed in his presence. (*Id.*, Ex. B at 139:1-7)

While serving at Laredo, Plaintiff performed two brake replacements on T-33s with Bendix and Goodyear brakes. (*Id.*, Ex. A at 25:14-26:7) Plaintiff was not aware of the manufacturer of any brakes he removed or installed on the T-33s. (*Id.*, Ex. B at 136:16-25; 141:16-18) Plaintiff did not know how he obtained the name Bendix and Goodyear, but he was "certain either Bendix or Goodyear" built the brakes for the T-33s and F-80s. (*Id.* at 137:20-25) In addition to personally performing brake work at Laredo, Plaintiff was present "five or six times" when other mechanics performed brake work. (*Id.*, Ex. A at 27:24-28:5) He was not aware of the manufacturer of the brakes other mechanics installed in his presence. (*Id.*, Ex. B at 138:16-25)

While at Hamilton, Plaintiff performed "seven or eight" brake replacements with Bendix or Goodyear brakes on F-80s. (*Id.*, Ex. A at 31:25-32:16) He did not see any manufacturer's

6

name on the brakes or packaging, nor was he aware of the manufacturer of the brakes he removed from the F-80s. (*Id.*, Ex. B at 151:24-152:2; 153:3-154:2) Plaintiff also performed eight brake replacements on C-119s while at Hamilton. (*Id.*, Ex. A at 34:2-9) Plaintiff testified that the brakes on the C-119s were bladder and drum brakes. (*Id.* at 34:2-14; Ex. B at 154:11-18; Ex. B at 246:9-247:4) When asked the manufacturer of brakes he installed on the C-119s he responded, "[a]ll I can remember is Bendix and Goodyear. Those two names stick with me." (*Id.* at 37:24-38:3) However, Plaintiff later testified that he was not aware of the manufacturer of brakes he installed or removed on the C-119s. (*Id.*, Ex. B at 154:19-155:1)

Plaintiff testified that he performed at least two brake replacements on his personal Cessna 150 with what "could have been Bendix" brakes. (*Id.*, Ex. A at 45:13-46:7) However, upon specific questioning about the brake work he performed on his Cessna 150, Plaintiff testified that he was not aware of the manufacturer of the brakes he removed or installed and could not offer any testimony that he did indeed install Bendix brakes. (*Id.*, Ex. B at 185:11-186:25)

### e. United Technologies Corporation

Plaintiff did not identify an asbestos-containing UTC or Pratt & Whitney product. (*See* D.I. 121, Ex. E)

### f. Goodyear Tire & Rubber Company

While stationed at Williams and Hamilton, Plaintiff testified that he performed a total of eleven to thirteen brake replacements on F-80s with "Goodyear (and Bendix)" brakes. (D.I. 123, Ex. A at 18:9-25; 20:21-25; 31:25-32:16) While stationed at Laredo, Plaintiff performed two brake replacements on T-33s with "Goodyear (and Bendix)" brakes. (*Id.* at 25:14-26:7)

Plaintiff also performed eight brake replacements on C-119s while at Hamilton. (*Id.* at

7

34:2-9) Plaintiff testified that the brakes on the C-119s were bladder and drum brakes. (*Id.* at 34:2-19; 154:11-18) When asked the manufacturer of brakes he installed on the C-119s, he responded, "[a]ll I can remember is Bendix and Goodyear. Those two names stick with me." (*Id.* at 37:24-38:3) Plaintiff did not know the manufacturer of any of the brakes he removed from the C-119s. (*Id.* at 154:19-22) Finally, Plaintiff testified that, at Travis, he changed the disc brakes on the C-141 "maybe three times" with what he believed to be Goodyear breaks. (*Id.* at 40:5-25; 41:12-20; 42:6-11) He stated that he was also present for five or six brake jobs that other mechanics performed, with what he believed to be Goodyear brakes. (*Id.* 42:12-20)

## III. LEGAL STANDARD

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion that a fact cannot

be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).[7] A plaintiff's failure to respond "is not alone a sufficient basis for the entry

---

[7] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matters sufficient to show that there is no

9

of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, 2014 WL 3783878, *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Svcs., Inc.*, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

### B. California Law

The parties stipulate and agree that California substantive law should be applied to the claims and defenses asserted in this case. (D.I. 103)

#### 1. Product Identification/Causation Under California Law

A plaintiff in asbestos litigation must prove, as a threshold matter, exposure to the defendant's product. *McGonnell v. Kaiser Gypsum Co.*, 120 Cal. Rptr. 2d 23, 26 (Cal. Ct. App. 2002). If there has been no exposure, there is no causation. *Dumin v. Owens-Corning Fiberglas*

---

genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.* However, the Advisory Committee noted that summary judgment is meant to pierce the pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly, the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule. *Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The amendment, however, was not designed to affect the ordinary standard applicable to summary judgment. *Id.*

*Corp.*, 33 Cal. Rptr. 2d 702, 704 (Cal. Ct. App. 1994). The standard for proving causation in an asbestos-related cancer case was set forth by the California Supreme Court in *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203 (Cal. 1997). In *Rutherford,* the court held:

> In the context of a cause of action for asbestos-related latent injuries, the plaintiff must first establish some threshold exposure to the defendant's defective asbestos-containing products, and must further establish in reasonable medical probability that a particular exposure or series of exposures was a "legal cause" of his injury, *i.e.*, a substantial factor in bringing about the injury. In an asbestos-related cancer case, the plaintiff need not prove that fibers from the defendant's product were the ones, or among the ones, that actually began the process of malignant cellular growth. Instead, the plaintiff may meet the burden of proving that exposure to defendant's product was a substantial factor causing the illness by showing that in reasonable medical probability it was a substantial factor contributing to the plaintiff's or decedent's risk of developing cancer.

*Id.* at 1223. In determining which exposures to asbestos-containing products contributed significantly enough to the total occupational dose to be considered "substantial factors" in causing the disease, the *Rutherford* court also stated that "[t]he substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Id.* at 1220.

### 2. Bare Metal Defense Under California Law

The Supreme Court of California has held that, under California law, a product manufacturer generally is not liable in strict liability or negligence for harm caused by a third party's products. *See O'Neil v. Crane Co.*, 53 Cal. 4th 335 (2012). As such, defendant manufacturers are not liable for harm caused by asbestos products they did not manufacture or distribute. *Id.* at 362–66. Similarly, the court does not hold that defendants are strictly liable for a failure to warn of the hazards of the release of asbestos dust surrounding their products. "California law does not impose a duty to warn about dangers arising entirely from another manufacturer's product, even if it is foreseeable that the products will be used together." *Id.* at 361. As to a plaintiff's claim based on a defendant's negligent failure to warn, the court

11

concluded that "expansion of the duty of care as urged here would impose an obligation to compensate on those whose products caused the plaintiffs no harm. To do so would exceed the boundaries established over decades of product liability law." *Id.* at 365.

## IV. DISCUSSION

### A. Union Carbide Corporation

The court recommends granting Union Carbide's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Plaintiff was exposed to an asbestos-containing Union Carbide product. Neither in Mr. DeCastro's deposition, nor in Plaintiffs' discovery responses, did Plaintiffs identify a Union Carbide product. (*See* D.I. 121, Ex. E; D.I. 113, Ex. C) Therefore, summary judgment should be granted.

### B. Curtiss-Wright Corporation

The court recommends granting Curtiss-Wright's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Plaintiff was exposed to an asbestos-containing Curtiss-Wright product. Plaintiff recalled working on Curtiss-Wright C-46 aircraft while stationed at Hamilton. (D.I. 111, Ex. A at 297:4-15) He testified, however, that he does not know if any of this work caused him to be exposed to asbestos, and that the only possible exposure he could have related to the aircraft was from changing brakes. (*Id.* at 298:22-299:2) He did not remember doing any brake work on any of the C-46s. (*Id.* at 298:12-14) As such, Plaintiff testified that he does not think he was exposed to any asbestos from the work he did on Curtiss-Wright C-46 aircraft. (*Id.* at 299:9-13) Plaintiff also does not remember seeing anyone else working on a C-46 that would have exposed him to asbestos. (*Id.* at 299:20-24) Moreover, Plaintiff has not produced a medical causation expert report that opines that Plaintiff's injuries are related to Curtiss-Wright aircraft or equipment. Therefore, Plaintiff has not shown

12

exposure to a Curtiss-Wright asbestos-containing product, nor has he established with reasonable medical probability that such exposure was a substantial factor in bringing about his injury. *Rutherford*, 941 P.2d at 1219. Therefore, summary judgment should be granted.

**C. Pfizer, Inc.**

The court recommends granting Pfizer's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Plaintiff was exposed to an asbestos-containing Pfizer product. Neither in Mr. DeCastro's deposition, nor in Plaintiffs' discovery responses, did Plaintiffs identify a Pfizer product. (*See* D.I. 121, Ex. E; D.I. 113, Ex. C) Because Plaintiff has failed to show that his injuries were proximately caused by a Pfizer asbestos-containing product, summary judgment should be granted.

**D. Honeywell International, Inc.**

The court recommends granting Honeywell's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Plaintiff was exposed to an asbestos-containing Honeywell product. Plaintiff has not shown exposure to a Honeywell asbestos-containing product, nor has he established in reasonable medical probability that such exposure was a substantial factor in bringing about his injury. *Rutherford*, 941 P.2d at 1219.

Plaintiff could not identify a specific aircraft or a specific airbase where he worked with a Bendix product, nor could he testify regarding the number of times, if any, he may have worked with a Bendix product.[8] (D.I. 115, Ex. B at 177:24-178:10) Although Plaintiff named Bendix as a manufacturer of a brand of replacement brakes he worked with at Air Force bases Williams, Laredo, Hamilton, and also on his personal aircraft, he identified Bendix as the brake manufacturer only because he recalled seeing Bendix packaging at some unknown place at an

---

[8] Honeywell is the successor in interest to the Bendix. (D.I. 72 at ¶ 8)

13

unknown time. (D.I. 115, Ex. A at 18:9-25; 20:21-25; 25:14-26:7; 31:25-32:16; 45:13-46:7; Ex. B at 132:25-133:6) There was no manufacturer's name on the packaging of replacement brakes, so Plaintiff did not know what manufacturer's brakes he or the other mechanics removed or installed. (*Id.*, Ex. B at 132:3-8; 138:16-25; 151:24-152:2; 153:3-154:2; 185:11-186:25) A mere possibility of exposure is not enough to establish causation when the evidence creates only a "dwindling steam of probabilities that narrows into conjecture." *McGonnell*, 98 Cal. App. 4th at 1105. Moreover, Honeywell's former "Project Manager for the Aerospace Aircraft Landing Systems, Wheels and Brakes Division" stated in an affidavit that Honeywell did not manufacture, supply, sell, or distribute brakes for Cessna 150, F-80, and T-33 aircraft (D.I. 115, Ex. C at ¶ 4), nor did Honeywell manufacture the bladder or drum brakes that Plaintiff testified he installed on the C-119 (D.I. 115, Ex. C at ¶¶ 5-6). Thus, Plaintiff's testimony naming Bendix as a brand of brakes he may have encountered during his service in the Air Force is Plaintiff's own speculation and conjecture rather than evidence of record sufficient to create a disputed material fact.

Because Plaintiff has failed to show that his injuries were proximately caused by a Honeywell/Bendix asbestos-containing product, summary judgment should be granted.

### E. United Technologies Corporation

The court recommends granting UTC's motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether a UTC asbestos-containing product was a substantial factor in causing his injuries. Plaintiff did not identify any exposure to an asbestos-containing UTC or Pratt & Whitney engine or product. (*See* D.I. 121, Ex. E) Plaintiff was never certified as an engine power plant mechanic or specialist, and the only work he performed on aircraft engines was to remove and install component parts. (*Id.* at 255:19-24;

14

256:9-16; 268:12-17) The only significant engine repair Plaintiff described was when he replaced a single cylinder on an engine in a C-124. (*Id.* at 257:5-259:24) However, he did not know the manufacturer of the replacement cylinder, nor did he know when the engine or aircraft was built, or its prior maintenance history. (*Id.* 260:17-261:24) Plaintiff does not believe that this cylinder replacement caused him to be exposed to asbestos. (*Id.* at 269:20-24) Therefore, Plaintiff has not established exposure to a UTC asbestos-containing product.

Moreover, application of the bare metal defense warrants summary judgment in UTC's favor because Plaintiff fails to show that a material issue of fact exists as to whether Pratt & Whitney provided asbestos-containing replacement parts to be used with its engines. Pratt & Whitney aviation engines are mostly metal, and because relatively few asbestos-containing parts are included in the final assembly of a Pratt & Whitney engine, relatively few repair or maintenance procedures require the removal of an asbestos-containing part. (*Id.*, Ex. G at ¶¶ 5-7) These asbestos-containing parts were not manufactured by Pratt & Whitney. (*Id.* at ¶ 8) The manufacturers and vendors of these asbestos-containing parts were free to, and did, supply replacement parts that could be used on Pratt & Whitney engines directly to operators of Pratt & Whitney engines, such as the U.S. Air Force. (*Id.* at ¶ 9) Without records identifying a particular part as being supplied by Pratt & Whitney, the only way to know that a non-metal part, such as a gasket, was supplied by Pratt & Whitney would be to determine that the non-metal part had not been removed since the engine was originally assembled at the Pratt & Whitney factory. (*Id.* at ¶ 10) Plaintiff did not know the manufacturer of any component part, nor did he know the maintenance history of the aircrafts. (D.I. 121, Ex. E at 255:19-24; 256:9-16; 260:17-261:24; 268:12-17) California has recognized the "bare metal defense" and under California law, a product manufacturer is not liable in strict liability or negligence for harm caused by a third

15

party's products. *O'Neil*, 53 Cal. 4th at 348, 362-66. Nor does a manufacturer have a duty to warn "about dangers arising entirely from another manufacturer's product, even if it is foreseeable that the products will be used together." *Id.* at 361.

Plaintiff has failed to show that a material issue of fact exists as to whether he was exposed to asbestos from products manufactured or supplied by UTC. Consequently, the court recommends granting UTC's motion for summary judgment.

### F. Goodyear Tire & Rubber Company

The court recommends granting Goodyear's motion for partial summary judgment, because there is no genuine issue of material fact in dispute as to whether Plaintiff was exposed to an asbestos-containing Goodyear product from C-119 and C-141 aircraft.

Goodyear moves for partial summary judgment as to Plaintiff's alleged brake work on C-119s and C-141s because Plaintiff failed to develop non-speculative evidence of exposure to an asbestos-containing product on such aircraft for which Goodyear is responsible. (D.I. 123 at 4) Plaintiff performed approximately eight brake replacements on C-119s while at Hamilton. (*Id.* at 34:2-9) Plaintiff testified that the brakes on the C-119s were bladder and drum brakes. (*Id.* at 34:2-14) When asked to identify the manufacturer of brakes he installed on the C-119s he responded, "[a]ll I can remember is Bendix and Goodyear. Those two names stick with me." (*Id.* at 37:24-38:3) However, Plaintiff later testified that he was not aware of the manufacturer of brakes he installed or removed on the C-119s. (D.I. 115, Ex. B at 154:19-155:1) Additionally, Goodyear never manufactured or supplied drum brakes for C-119 aircraft. (D.I. 123, Ex. B at ¶ 9) As to C-141 aircraft, Plaintiff changed the brakes on the C-141 "maybe three times" with what he believed to be Goodyear breaks. (*Id.* at 40:5-25; 42:6-11) He stated that he was also present for five or six brake jobs that other mechanics performed, with what he believed to be

16

Goodyear brakes. (*Id.* 42:12-20) However, Goodyear's brakes for the C-141 aircraft were all non-asbestos tri-metallic brakes. (D.I. 123, Ex. B at ¶ 9) As such, Plaintiff has not shown exposure to a Goodyear asbestos-containing product in relation to the C-119 and C-141 aircraft, nor has he established in reasonable medical probability that such exposure was a substantial factor in bringing about his injury. *Rutherford*, 941 P.2d at 1219.

Therefore, the court recommends granting Goodyear's motion for partial summary judgment with respect to Plaintiff's alleged brake work on the Fairchild C-119 and Lockheed C-141. Plaintiffs' claims against Goodyear are, therefore, limited to Mr. DeCastro's alleged exposure from brake work on the Lockheed T-33 and Lockheed F-80.

## V. CONCLUSION

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting Defendants' motions for summary judgment and partial summary judgment, respectively.

| Defendant | Motion for Summary Judgment |
|---|---|
| Union Carbide Corporation | GRANT |
| Curtiss-Wright Corporation | GRANT |
| Pfizer, Inc. | GRANT |
| Honeywell International, Inc. | GRANT |
| United Technologies Corporation | GRANT |
| Goodyear Tire & Rubber Company | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de

17

novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 25, 2018

Sherry R. Fallon
United States Magistrate Judge