IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION ) | |
| ) | |
| JOHN DECASTRO and VICKI ) | |
| DECASTRO, his wife, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civ. No. 16-951-LPS-SRF |
| ) | |
| AEROJET ROCKETDYNE ) | |
| HOLDINGS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

Presently before the court in this asbestos-related personal injury action is defendant Ford Motor Company's ("Ford") motion for summary judgment. (D.I. 118)[1] For the reasons that follow, the court recommends GRANTING-IN-PART and DENYING-IN-PART Ford's motion for summary judgment.

## II. BACKGROUND

### A. Procedural History

On September 1, 2016, plaintiffs John DeCastro ("Mr. DeCastro") and Vicki DeCastro ("Mrs. DeCastro"), his wife (collectively, "Plaintiffs"), originally filed this personal injury action against multiple defendants in the Superior Court of Delaware, asserting claims arising from Mr. DeCastro's alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On October 14, 2016, the case was removed to this court by defendant United Technologies Corporation pursuant to 28 U.S.C.

---

[1] All briefing associated with this motion may be found at D.I. 119; D.I. 126; D.I. 130.

§§ 1442(a)(1), the federal officer removal statute,[2] and 1446. (D.I. 1) Plaintiffs filed a first amended complaint on May 24, 2017. (D.I. 72) On October 30, 2017, Ford filed the pending motion for summary judgment, which Plaintiffs oppose.[3] (D.I. 118; D.I. 126)

**B. Facts**

Plaintiffs allege that Mr. DeCastro developed lung cancer as a result of exposure to asbestos-containing materials during his service in the United States Air Force, civilian employment with Pacific Bell Telephone and United Airlines, and personal automotive and aircraft maintenance work. (D.I. 72 at ¶¶ 3-6, 14) Plaintiffs contend that Mr. DeCastro was injured due to exposure to asbestos-containing products that defendants manufactured, sold, distributed, licensed, or installed. (*Id.* at ¶ 9) Accordingly, Plaintiffs assert claims for negligence, willful and wanton conduct, strict liability, and loss of consortium. (*Id.* at 6-13)

Mr. DeCastro was deposed on February 21 and 22, 2017. (D.I. 37) Plaintiffs did not produce any other fact or product identification witnesses for deposition.[4] Mr. DeCastro served in the United States Air Force for forty years, working as an aircraft mechanic, aircraft foreman, and aircraft superintendent from 1950 to 1990.[5] (D.I. 126, Ex. A at 14:17-24) Throughout this time period, Mr. DeCastro performed automotive work on his personal vehicles, as well as

---

[2] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

[3] Per the court's Administrative Procedures Governing Filing and Service by Electronic Means, effective October 16, 2014, Plaintiffs' opposition to Ford's motion for summary judgment was due by 6 p.m. on November 17, 2017 – a deadline Plaintiffs failed to timely meet.

[4] The deadline for completion of depositions of all co-worker, product identification, and other exposure testimony witnesses was July 17, 2017. (D.I. 48 at 8)

[5] Because this Report and Recommendation only addresses Ford's motion for summary judgment, the court will not provide a full recitation of the facts in relation to Mr. DeCastro's extensive air force career.

2

vehicles owned by friends and relatives. In relation to Ford, Mr. DeCastro alleges that he was exposed to asbestos from the repair work he performed on Ford manufactured vehicles and parts.

## 1. Plaintiffs' Product Identification Evidence

Mr. DeCastro testified about repairs he performed on at least eight different Ford vehicles. In 1948, Mr. DeCastro owned a used 1935 Ford coupe. (D.I. 121, Ex. E at 197:14-18; Vol. II at 245:9-25)[6, 7] Mr. DeCastro performed work on the carburetor and clutch. (*Id.*, Vol. II at 246:4-11) He did not know the brand of the carburetor gasket he removed, and did not know whether the gasket was an original or an after-market replacement. (*Id.*, Vol. II at 246:8-23)

Also, from 1948 to 1949, Mr. DeCastro owned a used 1938 Ford coupe. (*Id.* at 198:19-199:3) Mr. DeCastro replaced the engine, and did not know the manufacturer of any of the parts he removed, but stated that they were "probably all Ford parts." (*Id.* at 199:4-9)

From roughly 1952 to 1953, Mr. DeCastro owned a used 1936 Ford two-door. (*Id.* at 189:12-21; 201:13-22) The only work he recalled performing on this vehicle was replacing the carburetor. (*Id.* at 201:13-20) Mr. DeCastro did not know the manufacturer of the parts he removed or installed. (*Id.* at 201:23-202: 5)

Mr. DeCastro owned a used 1936 Ford three-window from 1952 to 1955. (*Id.* at 202:6-10; 202:17-20) Mr. DeCastro changed the transmission "about three times." (*Id.*) He also

---

[6] The court must refer to the deposition transcript submitted as an exhibit to another defendant's motion for summary judgment (D.I. 121, Ex. E) because neither Ford nor Plaintiffs provided the court with all relevant portions of Mr. DeCastro's testimony in relation to his alleged exposure to asbestos associated with Ford vehicles.

[7] Ford cites to Mr. DeCastro's testimony at p. 197, which refers to a "1945 coupe." (D.I. 119 at 2) However, when viewed in light of other testimony and evidence, it appears that the examining attorney incorrectly referenced the car as a "1945 coupe" instead of a "1935 coupe." (*See* D.I. 121, Ex. E at Vol. II, 245:9-246:23) For example, in addition to Mr. DeCastro's oral testimony, Plaintiffs submitted a document that Mr. DeCastro created which lists the cars he allegedly owned throughout his life. (*See* D.I. 126, Ex. C) Mr. DeCastro listed a "1935 Ford Five Window," but did not list a 1945 Ford of any model. (*See id.*)

3

replaced the brakes "from a mechanical brake linkage to hydraulic," and installed "new racing intake manifolds and heads." (*Id.* at 202:8-15) Mr. DeCastro did not know the maintenance history of this vehicle. (*Id.* at 202:21-22) He did not know the manufacturer of the parts he removed or installed when performing the transmission work. (*Id.* at 202:23-203:6) As to the brakes, Mr. DeCastro did not know what brand of brakes he removed from the vehicle. (*Id.* at 203:7-17) He testified that the replacement brakes he used were 1939 Ford hydraulic brakes, which he identified by a Ford emblem on the plates. (*Id.* at 203:18-204:16) To the extent Mr. DeCastro knew the brand of gaskets he installed on this vehicle, he identified non-Ford gaskets. (*Id.* at 248:21-249:12)

From roughly 1952 to 1953, Mr. DeCastro owned a used dark-green 1936 Ford coupe. (*Id.* at 229:16-230:15; 232:9-11) He did not know the vehicle's maintenance history. (*Id.* at 230:16-18) Mr. DeCastro generally performed "engine work" on this vehicle, and replaced the transmission "a couple of times." (*Id.* at 230:4-8) Mr. DeCastro identified Ford as the brand of intake manifolds, exhaust manifolds, and heads he installed on this vehicle. (*Id.* at 231:8-232:23)

Mr. DeCastro owned a 1955 Ford Crown Victoria from 1955 to 1959, which was new when purchased. (*Id.* at 215:14-216:4) During this time, he personally performed carburetor repairs "about five times." (*Id.* at 216:5-217:11) Mr. DeCastro did not know the manufacturer of the carburetors that he installed on this Ford vehicle. (*Id.* at 217:16-18)

From roughly 1959 to 1962, Mr. DeCastro owned a used black 1936 Ford three-window. (*Id.* at 234:10-235:3) He did not know the maintenance history of the vehicle. (*Id.*, Vol. II at 311:16-20) Mr. DeCastro performed brake, clutch, and gasket work on the vehicle. (*Id.* at 234:16-20) He removed and installed Chevrolet products when he performed the transmission work on this vehicle. (*Id.* at 235:4-10) Mr. DeCastro did not know the manufacturer of the

4

brakes or clutches he removed or installed, and any gasket work he performed on the vehicle was done with Chevrolet gaskets because the car contained a Chevrolet engine. (*Id.*, Vol. II at 310: 13-311:15; 311:21-24)

From about 1979 to 1982, Mr. DeCastro owned a used 1936 Ford "three-window chopped full custom." (*Id.*, Vol. II at 280:15-24) He was not aware of the vehicle's maintenance history, except for the custom body work that had been performed. (*Id.*, Vol. II at 280:25-281:12) This vehicle contained a 1980 Chevrolet engine, which Mr. DeCastro removed and replaced with another Chevrolet engine. (*Id.*, Vol. II at 281:16-25) Mr. DeCastro also installed a stereo system in the vehicle, but did not perform any other mechanical repairs. (*Id.*, Vol. II at 282:9-17)

Although Mr. DeCastro initially identified installing Ford brakes only on his used 1936 Ford three-window that he owned from 1952 to 1955 (*id.* at 202:6-10; 202:17-20; 203:7-204:16), he later stated, when asked by his attorney, that he installed Ford brakes on the "the '35 five-window, the '36 chopped vehicle, and the '36 three-window that was in the Roadster Show" (*id.*, Vol. II at 320:9-22).

## III.  LEGAL STANDARD

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 247-48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an

6

essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

### B. California Law

The parties stipulate and agree that California substantive law shall apply to the claims and defenses asserted in this case. (D.I. 104)

#### 1. Product Identification/Causation under California Law

A plaintiff in asbestos litigation must prove, as a threshold matter, exposure to the defendant's product. *McGonnell v. Kaiser Gypsum Co.*, 98 Cal. App. 4th 1098, 1103 (2002). If there has been no exposure, there is no causation. *Dumin v. Owens-Corning Fiberglas Corp.*, 28 Cal. App. 4th 650, 655-56 (1994). California courts have held that circumstantial evidence of exposure to asbestos insulation products while on the job may be enough to raise a triable issue of fact. *See Lineaweaver v. Plant Insulation Co.*, 31 Cal. App. 4th 1409, 1419-21 (1995); *see also Casey v. Perini Corp.*, 206 Cal. App. 4th 1222, 1238-39 (2012). The standard for proving causation in an asbestos-related cancer case was set forth by the California Supreme Court in *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203 (Cal. 1997). In *Rutherford*, the court held:

> In the context of a cause of action for asbestos-related latent injuries, the plaintiff must first establish some threshold exposure to the defendant's defective asbestos-containing products, and must further establish in reasonable medical probability that a particular exposure or series of exposures was a "legal cause" of his injury, *i.e.*, a substantial factor in bringing about the injury. In an asbestos-related cancer case, the plaintiff need not prove that fibers from the defendant's product were the ones, or among the ones, that actually began the process of malignant cellular growth. Instead, the plaintiff may meet the burden of proving that exposure to defendant's product was a substantial factor causing the illness by showing that in reasonable medical probability it was a substantial factor contributing to the plaintiff's or decedent's risk of developing cancer.

*Id.* at 1223. In determining which exposures to asbestos-containing products contributed significantly enough to the total occupational dose to be considered "substantial factors" in

7

causing the disease, the *Rutherford* court also stated that "[t]he substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Id.* at 1220.

### 2. Bare Metal Defense under California Law

Under California law, a product manufacturer generally is not liable in strict liability or negligence for harm caused by a third party's products. *See O'Neil v. Crane Co.*, 53 Cal. 4th 335 (2012). As such, defendant manufacturers are not liable for harm caused by asbestos products they did not manufacture or distribute. *Id.* at 362-66. Similarly, defendants are not strictly liable for a failure to warn of the hazards of the release of asbestos dust surrounding their products. "California law does not impose a duty to warn about dangers arising entirely from another manufacturer's product, even if it is foreseeable that the products will be used together." *Id.* at 361. As to a plaintiff's claim based on a defendant's negligent failure to warn, California law provides that such "expansion of the duty of care would impose an obligation to compensate on those whose products caused the plaintiffs no harm," and that "to do so would exceed the boundaries established over decades of product liability law." *Id.* at 365.

## IV. DISCUSSION

### A. Negligence Claim

#### 1. Mr. DeCastro's Exposure to a Ford Asbestos-Containing Product

The court recommends denying Ford's motion for summary judgment with respect to Ford's negligence for Mr. DeCastro's injuries allegedly caused by asbestos-containing products. Plaintiffs have presented sufficient evidence to raise a material issue of fact as to whether Ford supplied original asbestos-containing parts, and whether Mr. DeCastro was exposed to asbestos

8

when he performed personal automotive work on the eight Ford vehicles he owned or encountered in his lifetime.

Plaintiffs' claims require proof that Ford caused or contributed to Mr. DeCastro's exposure to asbestos, and that Ford's products were a "substantial factor in bringing about the injury." *McGonnell*, 98 Cal. App. 4th at 1103; *Rutherford*, 16 Cal. 4th at 982. Over the span of decades, Mr. DeCastro identified multiple instances where he worked directly with Ford products when performing personal automotive repair work. On the used 1936 Ford three-window he owned from 1952 to 1955, Mr. DeCastro replaced the brakes "from a mechanical brake linkage to hydraulic," and installed "new racing intake manifolds and heads." (D.I. 121, Ex. E at 202:6-20) He testified that the replacement brakes he used were 1939 Ford hydraulic brakes, which he identified by their Ford emblem. (*Id.* at 203:18-204:16) On the used dark-green 1936 Ford coupe he owned from 1952 to 1953, Mr. DeCastro performed "engine work" on the vehicle and identified Ford as the brand of intake manifolds, exhaust manifolds, and heads he installed on this vehicle. (*Id.* at 229:16-230:15; 231:8-232:23) Mr. DeCastro owned a new 1955 Ford Crown Victoria from 1955 to 1959, upon which he personally performed several carburetor repairs. (*Id.* at 215:14-217:11) Because the vehicle was new, Mr. DeCastro testified that the gaskets removed from the vehicle were "whatever Ford was using." (*Id.*, Vol II at 252:8-12) Finally, when later asked by his attorney, Mr. DeCastro testified that he installed Ford brakes on the "the '35 five-window, the '36 chopped vehicle, and the '36 three-window that was in the Roadster Show." (*Id.*, Vol. II at 320:9-22) Moreover, Plaintiffs proffered evidence that Ford incorporated asbestos-containing friction products into its vehicles since it began selling mass production vehicles in the early 1900s, and such asbestos-containing friction products were not phased out of its vehicles until 1984. (D.I. 126, Ex. D at Ans. to Interrogatory No. 9) Viewed in

9

the light most favorable to Plaintiffs, the fact-finder could decide that Ford supplied original, asbestos-containing carburetor gaskets, brakes, and other parts to which Mr. DeCastro was exposed and which were a substantial factor in causing his alleged injuries. This raises a genuine issue of material fact as to whether Mr. DeCastro's exposure is substantial enough that an expert can establish medical causation for the alleged injuries. *See Rutherford*, 16 Cal. 4th at 1220 ("[t]he substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical").

Viewing the evidence in the light most favorable to the non-moving party, Plaintiffs have established a genuine dispute of material fact as to exposure and substantial factor causation. Therefore, the court recommends denying Ford's motion for summary judgment with respect to Ford's negligence for Mr. DeCastro's injuries allegedly caused by asbestos-containing Ford parts.

### 2. Ford's Duty to Warn

The court recommends denying Ford's motion for summary judgment with respect to Ford's duty to warn.

Plaintiffs argue that Ford is liable for failing to warn about asbestos-containing replacement parts manufactured by other companies. (D.I. 126 at 12) California, however, has recognized the "bare metal defense." As such, "a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product unless the defendant's own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful combined use of the products." *O'Neil*, 53 Cal. 4th at 342. Nor does a manufacturer have a duty to warn "about dangers arising entirely from another

manufacturer's product, even if it is foreseeable that the products will be used together." *Id.* at 361.

However, there is a duty to warn based upon the characteristics of the manufacturer's own product, and any necessary warning must be tailored to the risks associated with the reasonably anticipated use of the manufacturer's own product. *See O'Neil*, 53 Cal. 4th at 351 (citing *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 1003 (1991)). Plaintiffs have presented evidence sufficient to create a dispute of fact as to whether original parts and materials supplied directly by Ford were a potential source of Mr. DeCastro's asbestos exposure, causing his alleged injuries. Mr. DeCastro owned a 1955 Ford Crown Victoria from 1955 to 1959, which was new when purchased. (D.I. 121, Ex. E at 215:14-216:4) During this time, he personally performed carburetor repairs "about five times." (*Id.* at 216:5-217:11) Mr. DeCastro also testified that he installed Ford hydraulic brakes on the used 1936 Ford three-window he owned from 1952 to 1955, identified Ford as the brand of intake manifolds, exhaust manifolds, and heads he installed on the used dark-green 1936 Ford coupe he owned from 1952 to 1953, and stated that he installed Ford brakes on the "the '35 five-window, the '36 chopped vehicle, and the '36 three-window that was in the Roadster Show." (*Id.* at 202:6-20; 203:18-204:16; 229:16-230:15; 231:8-232:23; Vol. II at 320:9-22) Plaintiffs have presented testimony based on Mr. DeCastro's first-hand exposure to particular Ford vehicles and parts that is sufficient to create an issue of fact on the duty to warn of foreseeable harm, precluding summary judgment.

Therefore, the court recommends denying Ford's motion for summary judgment as to its duty to warn.

### B. Strict Liability Claim

11

The court recommends denying Ford's motion for summary judgment as to Plaintiffs' strict liability claim. Under California law, "[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *Owens-Corning Fiberglas Corp.*, 53 Cal. 3d at 994 (citing *Greenman v. Yuba Power Products, Inc.*, Cal. 2d 57, 62 (1963)). "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." *Id.* Strict liability has been invoked for three types of defects—manufacturing defects, design defects, and "warning defects," i.e., inadequate warnings or failures to warn. *Id.* at 995.

As discussed *supra*, §IV(A)(1), Plaintiffs have presented sufficient evidence to establish a genuine dispute of material fact as to whether Mr. DeCastro's exposure to asbestos-containing Ford parts was a substantial factor in causing his alleged injuries. Additionally, as discussed *supra*, §IV(A)(2), Plaintiffs have presented testimony based on Mr. DeCastro's first-hand exposure to particular Ford vehicles and parts that is sufficient to create an issue of fact on the duty to warn of foreseeable harm, precluding summary judgment. Therefore, the court recommends denying Ford's motion for summary judgment as to Plaintiffs' strict liability claim.

### C. Loss of Consortium

The court recommends denying Ford's motion for summary judgment as to Mrs. DeCastro's loss of consortium claim. A claim for loss of consortium requires: "(1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury; (2) a tortious injury to the plaintiff's spouse; (3) loss of consortium suffered by the plaintiff; and (4) the loss was proximately caused by the defendant's act." *LeFiell Mfg. Co. v. Superior Court*, 55

12

Cal. 4th 275, 284-85 (2012) (citing *Hahn v. Mirda*, 147 Cal. App. 4th 740, 746 (2007)). "A cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse." *Id.* Material disputes of fact exist as to whether Ford is liable in negligence or under a theory of strict liability for Mr. DeCastro's alleged exposure to asbestos-containing Ford products and whether such exposure was a substantial factor in causing his alleged injuries. Therefore, factual questions exist with respect to Ford's liability on the loss of consortium claim, which arises from the alleged tortious injuries to Mr. DeCastro. Thus, the court recommends denying Ford's motion for summary judgment with respect to Mrs. DeCastro's related loss of consortium claim.

### D. Willful and Wanton Claim

The court recommends granting Ford's motion for summary judgment with respect to Plaintiffs' punitive damages claim. In Count VI of the complaint, Plaintiffs allege that Ford, and other defendants, acted "willfully and wantonly for their own economic gain and with reckless indifference to the health and safety of Plaintiff John DeCastro" in including asbestos in their products and failing to warn of the associated hazards. (D.I. 72 at ¶ 22)

Punitive damages are limited to situations where "a defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008) (internal citations omitted). The California Civil Code provides for an award of punitive damages for "the sake of example and by way of punishing the defendant" where it is proven "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or

malice." Cal. Civ. Code § 3294(a).[8] Malice is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* at § 3294(c)(1). Oppression "means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* at § 3294(c)(2). A "conscious disregard" of another's rights is demonstrated when a defendant "is aware of the probable harmful consequences of its conduct and willfully and deliberately fails to avoid those consequences." *Mock v. Mich. Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 330-31 (1992). However, "mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994) (citation and quotation marks omitted).

Plaintiffs argue that they have presented sufficient evidence to support their claim for punitive damages. (D.I. 126 at 17) First, Plaintiffs rely on evidence that, as early as 1935, researchers saw a connection between asbestos exposure and asbestosis and pulmonary carcinoma. (*Id.*, Ex. K at 142) However, this does not speak to what Ford knew specifically, and "mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages." *Tomaselli*, 25 Cal. App. 4th at 1287. Additionally, Plaintiffs allege that evidence shows that as early as 1970, Ford "knew that asbestos was a carcinogen and that asbestos dust would be created from the use of its brakes." (D.I. 126 at 17) Ford's "Program to Establish the Nature of Particulate Emissions from Brake Lining Wear," by Roy L. Gealer, dated April 14, 1970, states that:

---

[8] On September 14, 2017, the parties stipulated and agreed, and the court ordered, that the claims and defenses asserted by the parties in this matter shall be subject to application of California substantive law. (D.I. 104)

14

> The wearing down of brake lining on vehicles can result in the emission of wear dust into the atmosphere. About 100g of chrysotile asbestos per year are worn from the linings of the average car...However, since asbestos fiber has been implicated as a carcinogen, the potential hazard from brake lining wear debris could be disproportionate to its quantity... some of the wear products from brake linings accumulate on wheels parts and, in the case of drum brakes, some is retained within the drum.

(*Id.*, Ex. I) However, Mr. DeCastro testified about owning and performing work on Ford vehicles from 1948 to 1962, years before Ford's alleged knowledge. (D.I. 121, Ex. E at 189:12-21; 197:14-18; 198:19-199:3; 201:13-22; 202:6-10; 202:17-20; 215:14-216:4; 229:16-230:15; 232:9-11; 234:10-235:3; Vol. II at 245:9-25) The only Ford vehicle Mr. DeCastro owned and serviced after 1970 was from 1979 to 1982, on a used 1936 Ford "three-window chopped full custom" that contained a Chevrolet engine, which was removed and replaced with another Chevrolet engine. (*Id.*, Vol. II at 280:15-24; 281:16-25)

Plaintiffs fail to present evidence sufficient to create a factual issue in dispute as to whether Ford's conduct constitutes "oppression, fraud, or malice." Therefore, the court recommends granting Ford's motion for summary judgment with respect to Plaintiffs' punitive damages claim.

## V. CONCLUSION

For the foregoing reasons, the court recommends GRANTING-IN-PART and DENYING-IN-PART Ford's motion for summary judgment. (D.I. 118)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de

novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 15, 2018

Sherry R. Fallon
United States Magistrate Judge